40 F.3d 1244
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Diana P. MAY, Plaintiff-Appellant,
v.
DOVER ELEVATOR COMPANY, Defendant-Appellee.
 No. 94-1377.
 United States Court of Appeals, Fourth Circuit.
 Decided Nov. 22, 1994.
Submitted Sept. 27, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, District Judge. (CA-93-684-R)
 Gary R. Hershner, MORRISSEY & HERSHNER, Richmond, Virginia, for Appellant. Beverly Warner Snukals, MEZZULLO & MCCANDLISH, Richmond, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINS, MICHAEL, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Diana P. May appeals from the district court's order granting summary judgment in favor of Dover Elevator Company ("Dover") in May's negligence action. May alleged that Dover was liable for injuries she sustained in 1987 when an elevator in which she was riding suddenly dropped three floors. Finding no error, we affirm.
 
 
 2
 * May originally filed this action in a Virginia circuit court against Dover, a Delaware corporation with its principal place of business in Tennessee, and the Chippenham Hospital ("Chippenham"), a Virginia corporation. May alleged that she entered an elevator at the Chippenham Hospital intending to ride down to the first floor. The elevator rose to the fifth floor, descended to the third floor where it briefly stopped, but then rapidly descended to the first floor where it came to rest on the safety buffers eighteen inches below the first floor landing. May claimed she suffered physical and mental damages in the amount of $500,000 as a result of the accident.
 
 
 3
 At the time of the accident, Dover was under contract with Chippenham to maintain and repair the elevator. Various pieces of elevator equipment, however, were excluded from the contract, which expressly stated that Dover did not assume possession or control of any part of the elevator equipment. Accordingly, Chippenham's maintenance staff had complete access to the basement area where the elevator controls were housed.
 
 
 4
 One week prior to the accident, Dover performed a routine maintenance check on the elevator and, the day before the accident, Dover performed an annual "governor and safety test." The elevator operated normally both times. Immediately after the accident, Dover employees and the city inspector arrived at Chippenham. Dover arrived first, and adjusted the elevator so it would be level with the first floor. An examination of the elevator's normal slowdown/stopping device ("normal device") and the backup slowdown/stopping device ("backup device") failed to reveal a problem. Dover then bypassed the normal device and was able to duplicate the accident. This indicated that the backup device was not working, and that at the time of May's accident something caused the normal device to malfunction. A visual inspection of both devices failed to reveal a malfunction, but Dover adjusted the backup device to allow better electrical contact. The elevator operated properly thereafter.
 
 
 5
 May filed suit in state court in 1989, but voluntarily non-suited the action in 1992. Shortly thereafter, May instituted a second action, again naming Dover and Chippenham as defendants. On September 9, 1993, May sent Dover's counsel a proposed order to dismiss Chippenham from the lawsuit. Counsel for Dover endorsed the order and forwarded it to the state court. On September 17, 1993, the state court entered an order dismissing Chippenham from the suit. Because Chippenham's dismissal created federal diversity jurisdiction, Dover filed a notice of removal to the federal district court on October 14, 1993. May's motion to remand was denied.
 
 
 6
 In her response to Dover's motion for summary judgment, May relied primarily on the expert testimony of Michael Shiflett, an elevator inspector. Shiflett testified that, in his expert opinion, May's accident was caused because jumper cables were left on the circuitry which caused a bypass of the normal device. According to Shiflett, the out-of-condition state of the backup device allowed it to function properly until a point where it finally failed. Although there was never any evidence of jumpers left on the circuitry, Shiflett stated that this was the only plausible explanation. Shiflett's opinion was that Dover was negligent in placing the jumpers there or in allowing others access to the elevator control room. Shiflett also believed Dover was negligent for failing to discover the malfunctioning backup device when it performed the annual test the day before the accident.
 
 
 7
 The district court granted summary judgment to Dover. The court held that May had failed to show the existence of a disputed material fact supporting the theory that Dover negligently maintained either the normal or the backup devices. The court stated that the undisputed facts showed that Dover was not in exclusive control of the elevator control room, and that Shiflett's opinion that jumpers were left across the circuitry was pure speculation and conjecture. May timely appealed and argued district court error in denying her motion to remand, and alternatively in granting summary judgment to Dover.
 
 II
 
 8
 May argues on appeal that the district court erred in denying her motion to remand this case to state court. May bases this argument on two alternative theories. May first argues that the case was not removable because it was pending for over one year before Dover filed its notice of removal. Alternatively, May argues that even if notice was filed within the required one-year period, Dover failed to file for removal within thirty days of receiving notice that the case had become removable as required by 28 U.S.C.A. Sec. 1446(b) (West 1994).
 
 
 9
 A case filed in state court may not be removed to federal court based on diversity jurisdiction more than one year after commencement of the action. 28 U.S.C.A. Sec. 1446(b). May argues that the present action was commenced when she filed the first lawsuit in 1989. This contention is meritless. May voluntarily non-suited the first case in 1992, the effect of which was to end that action. See Thomas Gemmell, Inc. v. Svea Fire & Life Ins. Co., 184 S.E. 457 (Va.1936); Clark v. Clark, 398 S.E.2d 82, 88 (Va.App.1990). The relevant one-year period began to run in December 1992, when May filed her second lawsuit which became the present action. Hence, Dover's notice of removal filed in October 1993, was within the one-year limitation.
 
 
 10
 Alternatively, May argues that the notice of removal was untimely because it was filed thirty-five days after Dover's receipt of the proposed order dismissing Chippenham from the lawsuit. When a case as originally filed is not removable, a notice of removal may be filed within thirty days after the defendant's receipt, "through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C.A. Sec. 1446(b). May argues that the plain language of this rule required Dover to file its notice of removal within thirty days of September 9, 1993, the date Dover first saw a copy of May's proposed order.
 
 
 11
 May's contention is untenable. Application of the plain language of Sec. 1446(b) demonstrates that the thirty days did not begin to run until Dover received the court's order dismissing Chippenham from the case. Only at that point could Dover definitely ascertain that the case had become removable. See Grubb v. Donegal Mut. Ins. Co., 935 F.2d 57, 59 (4th Cir.1991). Prior to issuance of the order, May presumably could have changed her mind and decided not to voluntarily dismiss Chippenham. Accordingly, because Dover's notice of removal was filed within thirty days from the date the state court entered the dismissal order, May's subsequent motion to remand was properly denied.
 
 III
 
 12
 May argued below that Dover was liable under the doctrine of res ipsa loquitur because she suffered an injury of a kind that does not ordinarily happen in the absence of negligence, and the elevator control room was under Dover's exclusive control. See Logan v. Montgomery Ward & Co., 219 S.E.2d 685, 688 (Va.1975); Easterling v. Walton, 156 S.E.2d 787, 789 (Va.1967). Although it appears May abandoned her res ipsa loquitur argument on appeal, to the extent her brief addresses it, the argument lacks merit.
 
 
 13
 The evidence clearly shows that Dover was not in exclusive control of the elevator control room. Dover's contract specifically stated that Dover did not assume possession or control over any part of the elevator equipment. Moreover, the control room doors remained unlocked and Chippenham employees had keys to the basement area where the control room was located. Hence, the district court properly dismissed this claim.
 
 IV
 
 14
 May argues that if Dover did not have exclusive control over the elevator control room, then it was negligent in allowing universal access to the room. May argues that Dover had a duty, derived from the Virginia Building Code, to prevent universal access to the elevator equipment. This argument is untenable.
 
 
 15
 Under the Virginia Code, the Board of Housing and Community Development is empowered to promulgate a uniform state-wide building code. Va.Code Ann. Sec. 36-99 (Michie 1990). At the summary judgment hearing, May submitted a copy of the 1987 Virginia Statewide Building Code. This code specifies that technical requirements of building maintenance are governed by the BOCA National Existing Structures Code ("BOCA Code"). Article 21 of the BOCA Code in turn provides that the owner of the building is responsible for the care and maintenance of elevator equipment located within that building and that elevator maintenance shall conform to the American National Standards Institute ("ANSI") regulations. ANSI appendix 17.1, rule 101.3a requires that a convenient means of access to the elevator control room shall be provided for authorized persons. The regulation goes on, however, to define an authorized person as "someone who has been instructed in the operation or maintenance of the equipment and designated by the owner to use or maintain the equipment." Id. (emphasis added).
 
 
 16
 Contrary to May's assertion, these regulations do not place any duty on Dover to prevent access to the elevator control room. To the extent such an obligation exists at all, it falls on Chippenham as the owner of the building. Accordingly, Dover did not have a statutory duty to prevent universal access to the control room in which the equipment was housed and the district court properly dismissed this claim.
 
 V
 
 17
 May argues that the accident was caused by Dover's negligent maintenance of the elevator control room. To recover under this theory, May would need to establish that Dover negligently left jumper cables across the normal device circuitry or negligently failed to discover a defect with the backup device. May cannot meet this burden.
 
 
 18
 Negligence cannot be presumed from the mere happening of an accident. Brill v. Safeway Stores, Inc., 315 S.E.2d 214, 215 (Va.1984). The plaintiff must come forward with direct or circumstantial evidence of how or why an accident happened. Id. While this evidence need not exclude every other possibility for the cause of the accident, the plaintiff must show with reasonable certainty that the defendant caused the injury. Boyle v. United Technologies Corp., 792 F.2d 413, 416 (4th Cir.1986) (citing Logan v. Montgomery Ward & Co., 219 S.E.2d 685 (Va.1975)). An expert witness's endorsement of a wholly speculative theory of causation, however, is not sufficient to establish the defendant's responsibility to a reasonable certainty. See Stokes v. Geismer, 815 F.Supp. 904, 909 (E.D. Va.1993).
 
 
 19
 May's negligence claim is based upon a purely speculative theory of causation that fails to establish Dover's responsibility with reasonable certainty. Shiflett, May's expert, stated that he was of the opinion that Dover was negligent for leaving a jumper cable across the normal device after performing an annual test on the elevator the day prior to the accident. Because there is no evidence to support this theory, May argues that Dover's employees must have removed the jumper cables immediately after the accident.
 
 
 20
 May's argument is not supported by the evidence. Dover's employees who arrived at the scene after the accident stated that they never saw jumper cables on the normal device. Moreover, the annual test performed the day prior to the accident did not involve the use of jumper cables. Shiflett testified at a deposition that the only evidence upon which he based his opinion was that he could not think of another way the accident could have happened. Shiflett stated, however, that he would need to do more research before he could know for sure whether a jumper cable could have caused the elevator to function in the manner it did on the day of the accident. Accordingly, May's jumper cable theory is based purely on speculation and conjecture, and was insufficient to establish a material factual dispute concerning Dover's negligence.
 
 
 21
 Neither did May establish that Dover was negligent in failing to discover a malfunction in the backup device. The undisputed evidence shows that the elevator worked properly the morning of the accident, but then the backup device failed at the time of May's accident. Dover was not able to ascertain exactly what was wrong with the backup device, but an adjustment of the electrical connection appeared to solve the problem.
 
 
 22
 May argues that Dover was negligent for failing to discover that the backup device was in need of adjustment the day prior to the accident. May does not offer any evidence, however, to support a belief that the backup device needed adjustment at that time. Her own expert admitted that he had no idea how or when the backup device got out of adjustment or what the specific problem was. Furthermore, the elevator worked properly immediately prior to the accident. Hence, because the record contains no evidence to even permit an inference that a defect preexisted the annual test, the district court properly dismissed this claim. See Grim v. Rahe, Inc., 434 S.E.2d 888, 889-90 (Va.1993).
 
 
 23
 We therefore affirm the orders of the district court denying May's motion to remand and granting summary judgment in favor of Dover. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED